UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AWATIFABDULJALI AL RUBAEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-01297-SRC |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Awatifabduljali Al Rubaee's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Al Rubaee now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, the Court affirms the Commissioner's decision.

## I.   Procedural History

Al Rubaee's application was denied at the initial determination level. She then appeared before an Administrative Law Judge ("ALJ"). After consideration of "all the evidence," the ALJ concluded "the claimant has not been under a disability within the meaning of the Social Security Act." (Tr. 11). Al Rubaee then filed a request for review

---

[1] After this case was filed, Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

1

of the ALJ's decision with the Appeals Council of the Social Security Administration. The Appeals Council denied review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Al Rubaee now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II. Disability Determination—Five Steps

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not

2

significantly limit the claimant's physical or mental ability to do basic work activities."
*Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is

3

responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

## III. The ALJ's Decision

At Step One, the ALJ found Al Rubaee had not engaged in substantial gainful activity since May 14, 2015. (Tr. 13). At Step Two, the ALJ found Al Rubaee suffers from three medically determinable impairments: (1) mild osteoarthritis / degenerative joint disease / degenerative disc disease; (2) depression; and (3) post-traumatic stress disorder. (Tr. 13). At Step Three, the ALJ concluded Al Rubaee does not have an

4

impairment or combination of impairments that meets or equals one of the presumptively

disabling impairments listed in the regulations. (Tr.13-16).

Next, in beginning the analysis of Step Four, the ALJ determined Al Rubaee's

RFC.[2] The ALJ found that Al Rubaee

> has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she should never climb ropes, ladders or scaffolds. She is able to occasionally reach overhead with the dominant right upper extremity and must avoid all exposure to unprotected heights. The claimant is limited to work requiring no more than simple and routine tasks that do not require communication using English. She should have no direct interaction with the public and is limited to occasional interaction with co-workers and supervisors.

(Tr. 16). As part of this determination, the ALJ found Al Rubaee's allegations

about her physical and mental symptoms' intensity, persistence, and limiting effects were

not consistent with the medical records considered as a whole. (Tr. 17). Regarding Al

Rubaee's physical symptoms, the ALJ noted "[she] has not required physical therapy,

occupational therapy, or even surgery for any of these orthopedic impairments" and went

on to highlight the fact that Al Rubaee "told treating sources [that] she did much of the

work [at home]." (Tr. 17) The ALJ also pointed out a number of "essentially negative" x-

ray exams showing "mild degenerative disc disease," "minimal anterolisthesis," and

"very minimal osteophyte formation." (Tr. 17). Regarding Al Rubaee's mental

symptoms, the ALJ observed Al Rubaee's "failure to participate in appropriate treatment"

---

[2] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

5

and "[lack of] interest in attending trauma therapy." (Tr. 19-20). While acknowledging that Al Rubaee's depression may have contributed to her lack of interest in treatment, the ALJ "also observed [Al Rubaee] indicated myriad reasons [] inconsistent with that position, such as [lack of] transportation, for why she has not received consistent mental health treatment." (Tr. 20). Ultimately, the ALJ concluded the record, in total, simply did not reflect impairments of the sort urged by Al Rubaee or her treating physician, Dr. Maysaa Nageeb, whose opinion the ALJ gave "little to no weight." (Tr. 20). Rather, the lack of treatment, relatively benign objective testing, and Al Rubaee's daily activities indicated to the ALJ that Al Rubaee could perform medium work with certain exceptions. (Tr. 16, 20).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether Al Rubaee can perform her past relevant work in light of her designated RFC. The ALJ determined Al Rubaee has no past relevant work. (Tr. 20).

At Step Five, the ALJ analyzed whether Al Rubaee can successfully adjust to other work. The ALJ noted that if Al Rubaee had the RFC to perform the full range of medium work—in other words, if Al Rubaee's RFC matched perfectly with the medium work Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled; but, additional limitations impede Al Rubaee's ability to perform all or substantially all of the medium work requirements. (Tr. 21). Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Al Rubaee's occupational base to perform medium work. The VE testified that even after considering all of the limitations in Al Rubaee's RFC, Al Rubaee is able to

perform work as a kitchen helper, packager, or cleaner. (Tr. 21). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Al Rubaee is not disabled. (Tr. 21-22).

**IV.     Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**V.     Discussion**

Al Rubaee alleges the ALJ erred in three respects. First, she says the ALJ was wrong to give her treating psychiatrist's opinion "little to no weight" when such an opinion would ordinarily be entitled to greater deference under 20 C.F.R. § 416.927(c)(2). Second, in addressing her subjective complaints, Al Rubaee says the "ALJ

7

merely quoted *Polaski*, and does nothing more to support the finding that [her] testimony and complaints [] are not credible." Third, she says the ALJ "afford[ed] all mental medical professional's opinions 'little to no weight'," and therefore the ALJ "determined the RFC [] based upon her [own] understanding of PTSD." The Court addresses each argument in turn.

### A. Affording "Little to No Weight" to a Treating Source Opinion

Al Rubaee takes issue with the ALJ's disregard for a mental residual functional capacity questionnaire—colloquially referred to as a medical source statement—completed by her treating psychiatrist, Dr. Maysaa Nageeb. (Tr. 656-660). That statement concluded, among other things, that Al Rubaee is "unable to meet competitive standards" in maintaining regular attendance and punctuality at work, working with others without distraction, completing a workday without interruption, asking simple questions, carrying out instructions, remembering instructions, making plans independently, and dealing with normal work-related stress. (Tr. 658-659). The ALJ gave "little or no weight" to the statement in light of Nageeb's own, inconsistent treatment records, Al Rubaee's repeated refusal to undergo mental health treatment, and Al Rubaee's daily activities, which indicate "substantially greater ability than suggested by Dr. Nageeb." (Tr. 20).

Generally, more weight is given to medical opinions from treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [a claimant's] medical impairments[.]" 20 C.F.R. § 416.927(c)(2).[3] But, a treating source's opinion is only given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] record." *Id*. When controlling weight is not assigned, the ALJ assigns an otherwise appropriate weight by considering the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion, whether the treating source is a specialist, and other factors tending to support or contradict the opinion. *Id*. at §§ 416.927(c)(2)(i)-(ii), (3), (4), (5), (6).

The Court notes the year-long treatment relationship between Al Rubaee and Nageeb as well as the relative frequency of examination (monthly or bi-monthly) and the fact that Nageeb is a specialist. But, Nageeb's opinions were ultimately discredited due to a lack of supportability, lack of consistency between the medical source statement and various treatment records, Al Rubaee's own inconsistent daily activities, and other

---

[3] Section 416.927 was superseded by Section 416.920c for all claims filed after March 27, 2017. The new rule, 20 C.F.R. 416.920c(a), states: ""we will not ...give any specific evidentiary weight ... to any medical opinion(s) ... including those from your medical sources[.]" This Court has recently explained this new evaluative framework indicates "a complete abandonment of the assigned-weight regime in favor of a new persuasiveness-of-the-evidence regime." *Bankhead v. Berryhill*, 2019 WL 183970 at *5, n.5 (E.D. Mo. Jan. 14, 2019); *see also Mudge v. Saul*, 2019 WL 3412616 at *5 (E.D. Mo. Jul. 29, 2019) (ALJ cannot give specific evidentiary weight to any treating physician's medical opinions based on Section 416.920c(a)). Here, Al Rubaee appears to have protectively filed her application on May 14, 2015. (Tr. 11). That protective filing date is treated as the date of disability application. *See* 20 C.F.R. § 416.325(b)(2). There being no argument that this case involves a continuing disability review, *see Mudge*, 2019 WL 3412616 at *5, it is, therefore, the old Section 416.927 that applies.

contradictory factors such as Al Rubaee's refusal to undergo treatment. The Court finds that substantial evidence on the record as a whole supports the ALJ's conclusions.

Foremost, the medical source statement expressly states "the earliest date that the above description of limitations applies" is July 25, 2017—more than two years after Al Rubaee's application date. (Tr. 261, 660). The administrative hearing before the ALJ was held 16 days later on August 10, 2017. Therefore, the medical source statement has mitigated effect, which Al Rubaee's argument fails to address. *See Slaughter v. Astrue*, 857 F.Supp.2d 631, 635 (S.D. Tex. 2012) (noting the relevant period for supplemental security income benefits is the application filing date and the date of the ALJ's decision); *Michelle P. v. Berryhill*, 2019 WL 1318352 at *7 (D. Minn. Mar. 22, 2019) (questioning relevance of medical source statement that did not appear tied to the relevant disability period), appeal filed No. 19-2032 (8th Cir. May 21, 2019).

The ALJ considered the evidence that Nageeb's treatment records leading up to the medical source statement consistently reveal that Al Rubaee was disinterested and refused mental health treatment and was seeking Nageeb's medical opinion, in part, at the direction of her attorney. (Tr. 140, 143, 145, 556-558, 564-566, 574-576, 584-586). To be sure, there was a notable gap in treatment between April 2017 and July 2017 that came to an end because, in Nageeb's own words, Al Rubaee's "lawyer recommended she have up to date records and a recent PCP visit" as the administrative hearing approached. (Tr. 143). Nageeb also noted Al Rubaee was "unsure of how to navigate the legal system" and encouraged Al Rubaee to "obtain her paper work from her lawyer" so that Nageeb could review it. (Tr. 558).

Many of the records do reflect Al Rubaee's difficulties with depression and PTSD-like symptoms, but those same records indicate Al Rubaee was calm, pleasant, and cooperative, as well as having no harmful thoughts, calm and cooperative behavior, and intact memory, attention, and concentration. (Tr. 139-140, 144, 480, 483-484, 490, 513, 574, 585-586). The ALJ found that the medical source statement makes unexplained leaps in impairment severity not seen elsewhere in Nageeb's treatment notes; for example, a few months prior to the medical source statement, Nageeb noted Al Rubaee's "occasional hypervigilance," but by the time the medical source statement was drafted the severity was increased to "**extreme** hypervigilance." (Tr. 558, 656 (emphasis in original)). This Court could not locate a set of records that fairly explain this sudden, dramatic increase in severity.

And that is the case for many of the profound impairments indicated by the medical source statement. These impairments are set forth in checklist format, which is itself a reason to disregard them as conclusory. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). But, even when attempting to search the treatment notes for direct or even indirect support, it becomes apparent that many of the impairments seem to reach a sudden, crippling climax just before the administrative hearing despite precursor notes being muted in tone by comparison. (*Compare* Tr. 658-659; *with* 556-558, 564-566, 574-576, 584-586).

Finally, other evidence in the record is inconsistent with Nageeb's medical source statement. Examination notes from other treating providers indicated Al Rubaee had intact memory, attention, and concentration, as well as fair insight and judgment with goal-directed thought processes. (Tr. 439, 468-69, 471, 474, 477, 574, 585-586). Two providers

specifically note Al Rubaee's symptoms only "moderately limit activities." (Tr. 631, 635-636). And various records demonstrate Al Rubaee is capable of attending English language classes, visiting with her neighbors, performing her own personal care, cooking and caring for her children, doing some household chores, and shopping. (Tr. 306-310, 381, 410, 467, 470, 473, 503-504). There are even repeated references to the fact that Al Rubaee's symptoms may be attributable to "psychosocial stressors" (Tr. 491, 513, 625) including, in Nageeb's words, "social stressors [related to] income, lack of transportation, relying on her children, and confusion with the SSI paper work." (Tr. 484). *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (noting claimant's depression was merely "situational in nature," related to marital issues, and not severe).

At bottom, the Court concludes that various factors under Section 416.927(c) support the ALJ's decision not to give Nageeb's opinions controlling weight and support the ALJ's decision to, instead, attribute those opinions "little to no weight." An RFC is determined not by single provider's opinion, but by a comprehensive review of the total record. *See Boyd*, 831F.3d at 1020. And it does not matter that this Court may have weighed the evidence differently; rather, the ALJ's determinations must simply be based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154. Accordingly, the Court finds that substantial evidence on the record as a whole supports the ALJ's decision to partially reject Nageeb's conclusions. *See Toland v. Colvin*, 761 F.3d 931, 936-937 (8th Cir. 2014) (ALJ did not err in affording treating physician's opinion "little weight" where medical source statement included limitations not reflected in treatment notes or the medical record).

12

### B. Sufficiency of the ALJ's Analysis of Al Rubaee's Subjective Pain

Al Rubaee says she "testified to pain in her right arm and shoulder, and left knee to his (sic) foot" and that "she cannot lift her arm." In rejecting her subjective complaints of pain, Al Rubaee takes issue with the ALJ "merely quot[ing] *Polaski*" and doing "nothing more to support the finding that the plaintiff's testimony and complaints to her providers are not credible[.]" Al Rubaee refers to *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which sets forth various factors a court must consider in addressing a claimant's subjective complaints. *Id*. at 1322.

As an initial matter, to the extent Al Rubaee's argument suggests otherwise, this Court notes the ALJ is under no obligation to specifically address each *Polaski* factor as long as the ALJ at least "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Bryant v. Colvin*, 861 F.3d 779, 782-783 (8th Cir. 2017); *Swink v. Saul*, 931 F.3d 765, 770-771 (8th Cir. 2019) (accord). The ALJ expressly acknowledged *Polaski* in the RFC analysis. (Tr. 18). So, the only question is whether the ALJ went on to consider them in her analysis.

The record shows that the ALJ properly considered the *Polaski* factors. The ALJ noted Al Rubaee's inconsistent daily activities, which included doing chores around the house, visiting neighbors, and taking care of her own personal needs. (Tr. 15, 17). The ALJ further noted "the claimant has not required physical therapy, occupational therapy, or even surgery for any of [her] orthopedic impairments." (Tr. 17). Various clinical findings were reviewed including a host of x-rays demonstrating "mild" osteoarthritis and "minimal" anterolisthesis. (Tr. 17-18). Indeed, this Court's own review shows a variety of records

13

concluding Al Rubaee has only "minimal degenerative disc disease" (Tr. 373), "mild left kneed osteoarthritis" (Tr. 628), "stable" shoulder impairments (Tr. 601) with normal strength, bulk, and tone (Tr. 124, 140, 145, 469, 473, 474, 477, 480, 484, 490, 576), normal range of shoulder motion with no motor or sensory deficits (Tr. 416, 426), normal knee range motion with "conservative" treatment (Tr. 136-137), and normal gait and station (Tr. 529, 553, 576, 586). In fact, on several occasions Al Rubaee refused treatment or declined to follow up on referrals. (Tr. 601, 606, 618, 625, 629).

The Court concludes the ALJ properly considered the *Polaski* factors. Among other things, relative lack of treatment for her physical impairments and Al Rubaee's refusal of treatment and failure to follow up on referrals support the ALJ's decision to discredit Al Rubaee's subjective complaints of pain. *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("failure to seek treatment may indicate the relative seriousness of a medical problem"); *Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007) (subjective complaints of pain could be discredited based on evidence that claimant received minimal medical treatment); *see also Twyford v. Commissioner, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (ALJ's did not err in rejecting claimant's subjective complaints that were contradicted by his work history, daily activities, and the objective medical evidence). The ALJ did not err in this respect.

### C. Whether the ALJ's RFC Determination was Properly Supported

Al Rubaee's final argument is that the ALJ "afforded each opinion 'little to no weight'" and, therefore, must have "determined the RFC … based upon [the ALJ's] own

understanding of PTSD." (ECF 20, p. 8). In essence, Al Rubaee appears to take issue with the fact that the ALJ largely discredited every medical opinion offered.

A claimant's RFC "must be supported by *some medical evidence* of a claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (emphasis added). But, "this is not to say that a particular *medical opinion* must be adopted; to the contrary, ALJs are within their discretion to discount every single medical opinion proffered to them" so long as they develop the record to include medical evidence of a claimant's limitations. *Moulton v. Berryhill*, 2019 WL 845660 at *3 (E.D. Mo. Feb. 21, 2019) (citing *Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008)); *Wasinger v. Berryhill*, 2017 WL 2257357 at *2 (W.D. Mo. May 23, 2017) (accord). Having highlighted many records above demonstrating the ALJ considered a myriad of sources for determining Al Rubaee's RFC, this Court concludes the ALJ did not formulate Al Rubaee's RFC based upon her "own understanding of PTSD" and that substantial evidence supports the ALJ's RFC.

## VI. Conclusion

Where substantial evidence on the record as a whole supports the ALJ's decision, this Court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the Court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Having found the ALJ's decision was supported by substantial evidence on the record as a whole, the Court affirms that decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 26th day of September 2019.

                                                        */s/ SL R. CL*
                                            STEPHEN R. CLARK
                                            UNITED STATES DISTRICT JUDGE